**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 18 2013, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW J. BORLAND**
Borland & Gaerte
Indianapolis, Indiana

**RUTH JOHNSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MAXIMILIAN SPIEGEL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-CR-687 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jeffrey W. Mendes, Judge Pro Tempore
Cause No. 49G04-1108-FA-60510

**April 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Maximilian Spiegel appeals his conviction for child molesting, as a Class A felony. Spiegel presents two issues for review:

1. Whether the prosecutor's statements made during cross-examination and closing argument constitute prosecutorial misconduct.

2. Whether the trial court abused its discretion when giving the jury an additional final instruction after deliberations had already begun.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In April 2011, eighteen-year-old P.L. wrote a letter to her older sister C.H., alleging that P.L. had been molested by "Uncle Max" since she was in first grade and that the abuse had just recently stopped. Exh. 13. C.H. showed the letter to her mother, who then telephoned her sister, Spiegel's wife. Spiegel was referred to as "Uncle Max." Spiegel also spoke to P.L.'s mother during that call, was crying, was extremely upset, and repeatedly threatened to kill himself, but he did not deny P.L.'s allegations.

P.L.'s mother then informed P.L.'s father, J.L., of the allegations. J.L. had previously been convicted of and incarcerated for molesting his step-daughter, C.H. J.L. telephoned Spiegel, who initially denied the allegations. Subsequently, though, Spiegel stated that he "did do it" and was "sorry for what he had done." Transcript at 197.

At the time of P.L.'s allegations, C.H. worked for the Indiana Department of Child Services. Spiegel telephoned C.H. several times beginning in May 2011. He inquired about DCS procedures and what would happen next, said he would admit what he had done, and apologized. During that time, Spiegel also sent several text messages to C.H.

2

In the texts, Spiegel said he had "hurt everybody so bad[ly,]" Exh. 9; apologized; and said he was in three kinds of therapy. And in June, Spiegel asked C.H. to encourage her mother and sister not to press criminal charges. He offered to make "retribution in the form of gifts" such as "paying for college or buying a vehicle for P.L." Id. at 144.

The State charged Spiegel with two counts of child molesting, as Class A felonies, and one count of sexual misconduct with a minor, as a Class B felony. The court held a jury trial on July 2, 2012. P.L. testified that she could not estimate how many times Spiegel had molested her, but she testified that it began when she was in first grade and continued for years. For example, she gave details of two occasions when she was seven years old when Spiegel blindfolded her and forced her to perform oral sex on him in exchange for candy. She also described an occasion when she was in eighth grade in which Spiegel picked her up on the pretense of taking her to buy tennis shoes as a reward for her team winning a championship. They stopped at his house, and he asked her to come in. He turned the television on for her, and pornography was playing. He left the room for a couple of minutes, and, when he returned, he pulled his penis out. She said she did not feel well, but he prayed over her and then made her perform oral sex on him. Finally, P.L. described a particular occasion when she was playing Barbie dolls with her cousin at Spiegel's house when Spiegel called to her from his bedroom. P.L. went to the bedroom and found Spiegel lying on the bed with his penis exposed through the zipper of his jeans. He stood and instructed her to kneel and had her perform oral sex on him.

Spiegel also testified at trial. The prosecutor asked whether he knew why his family believed P.L.'s allegations, and Spiegel answered that he did not know. In

response, the prosecutor commented, "You're a good liar." Transcript at 319. The trial court sustained Spiegel's objection and request to strike, and when he requested that the court admonish the jury, the trial court stated, "so admonished." Id. at 320. The trial court denied Spiegel's request for a mistrial.

Later, in its rebuttal to closing argument, the State made the following comment: "If you decide not to believe P.L., you go back and deliberate and when you're done you say, [']We believed her but we needed more evidence,['] we might as well just tell our children to just take it and shut up because that's what you'll be saying." Id. at 396. Spiegel objected on the ground that it was improper to "argue about . . . the effect on the community[.]" Id. The trial court responded that the statement was made during closing argument and was not evidence, overruling the objection.

Subsequently in closing argument, the State referred to P.L.'s father, who had previously been convicted of child molesting, had gone to prison, and had been "set free in prison because it changed his life when he went to prison" and "healed" him. Id. at 399. Then, referring to Spiegel, the prosecutor said, "That's what we're asking for the defendant. We're asking you to send a message that he can live his life differently." Id. The trial court overruled Spiegel's objection. Finally, the prosecutor also said, "You can't be set free by hiring an attorney to get you off when you know you've done wrong." Id. at 407. The trial court sustained Spiegel's objection and request to strike, and the prosecutor then stated, "Oh, no; he has a right to counsel. Absolutely. I would never want to do this without an attorney sitting over there." Id.

During deliberations, the jury sent two questions to the trial court:

4

1.       Did the molestation have to occur between July 1999 and June 2000 or (Rule/Instruction 5a) could the molestation occur at any time prior to her turning 14.

2.       Define "on or about." How much time can be added to the time frame July 19, 1999[,] and June 18, 2000.

Appellant's App. at 101. The trial court discussed the appropriate response with the parties. Spiegel initially objected "to the entire process" on the ground that there was no difference between the evidence at trial and the charging information[1] and, therefore, an additional instruction was neither necessary nor appropriate. Transcript at 432. The trial court noted the objection for the record but did not rule on it. Initially, the trial court did not agree with the State that there was a difference between the evidence and the charging information. However, after further discussion, the trial court concluded that there was a difference and that an additional instruction was necessary. The court then determined the language to be used in answering the jury questions and discussed the method of communicating that to the jury:

> The Court:    You want me to tell them there's a new instruction when they come back out or do you just want to give it to them without reading all this?
> [State]:    I would defer to [defense counsel] and what he feels comfortable with.
> [Defense]:    Judge, I think—I think we add a new instruction, we give them their instructions and–
> The Court:    Let them go back?
> [Defense]:    Let them go back.
> The Court:    Okay. Let's make copies. When they come out—
> [State]:    Not read them to them? Is that what you're saying, you don't need them read to the jurors?

---

[1] At trial P.L. testified to multiple incidents of abuse by Spiegel spanning several years. At the close of evidence, the State dismissed two counts, leaving only one count that charged Spiegel for molesting P.L. over a span of dates when she was approximately seven years old. Spiegel argued to the trial court that any confusion occasioned by the jury regarding dates, which was the basis for the jury question, arose after the State dismissed the other two counts and, therefore, was the State's own fault.

5

The Court:   I don't need them read to the jurors. I mean, as long as they have the instruction.

[State]:   And as long as they know that there's a new instruction in there?

The Court:   I'm just going to say we've reviewed your question and we've come to a decision, all parties, concerning an answer to your question or questions. There's an additional 5B1 instruction in your packet of which [sic] you were just given. This becomes part of your final—this becomes your preliminary instructions additional [sic]. Please go back and deliberate. Okay?

[Defense]:   That procedure's fine with me.

[State]:   Fine with the State.

The Court:   Okay? (court confers with staff.)

[Defense]:   Well, well—

The Court:   You said that's okay. Given them a copy of the new instruction—

[Defense]:   The new—the instructions. I think the issue is handing them this instruction by itself is drawing—is the drawing attention that I had concern about. Telling the jurors here's the instruction, you put it in your packet, that's—that's the drawing attention that I'm concerned about. I think—I think they—they should be—the instructions should be inserted and they should be given all the instructions.

The Court:   (Court confers with staff.) All right, we'll just make copies and reinsert them.

JURY RETURNS TO THE COURTROOM

The Court:   . . . In response to your question, the Court responds as follows: There is an additional instruction in your Court's preliminary instruction booklet number 5A1. Continue to deliberate. Good luck.

Transcript at 444-46. After deliberating further, the jury found Spiegel guilty of child molesting, as a Class A felony. The trial court entered judgment of conviction and sentenced Spiegel accordingly. Spiegel now appeals.

6

## DISCUSSION AND DECISION

### Issue One:  Prosecutorial Misconduct

Spiegel contends that the State committed prosecutorial misconduct when it made certain statements during the trial.  Whether a prosecutor's argument constitutes misconduct is measured by reference to caselaw and the Rules of Professional Conduct. Sobolewski v. State, 889 N.E.2d 849, 856 (Ind. Ct. App. 2008), trans. denied.

> We evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis.  We first determine whether misconduct occurred, then, if there was misconduct, we assess "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise.  Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006).  To preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate.  Id.  Failure to request an admonishment or a mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error.  Id. Fundamental error is a narrow exception intended to place a heavy burden on the defendant.  It requires the defendant to establish that the misconduct "[made] a fair trial impossible or constitute[ed] clearly blatant violations of basic and elementary principles of due process" or that the misconduct "present[ed] an undeniable and substantial potential for harm."  Benson v. State, 762 N.E.2d 748, 756 (Ind. 2002); accord Cooper, 854 N.E.2d at 835.

Castillo v. State, 974 N.E.2d 458, 468 (Ind. 2012) (alterations in original).

Here, we first consider Spiegel's argument that the State committed prosecutorial misconduct when the prosecutor commented during cross-examination, "You're a good liar."  Spiegel contends that the prosecutor's comment was improper under Indiana Professional Conduct Rule 3.4.  That rule provides, in relevant part:

> A lawyer shall not[,] in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the

7

credibility of a witness, or the culpability of a civil litigant or the guilt or innocence of an accused[.]

Ind. Professional Conduct Rule 3.4(e).

The trial court sustained Spiegel's objection to the prosecutor's comment and complied with Spiegel's request for an admonishment, simply stating "so admonished." Transcript at 320. Spiegel then requested a mistrial, which was denied. On appeal, Spiegel contends that the admonishment was "inadequate under the circumstances," Appellant's brief at 12. But, as noted above, an admonishment is presumed to cure any error. TRW Vehicle Safety Sys. V. Moore, 936 N.E.2d 201, 221 (Ind. 2010) (citation omitted). When a party believes the admonishment is inadequate, then that party should request a mistrial. Castillo, 974 N.E.2d at 468. Thus, here, Spiegel's appeal should be from the denial of his motion for a mistrial. Because he does not set out the standard of review for such cases, we could consider the issue waived. Waiver notwithstanding, we consider the merits of his claim.

We conclude that the prosecutor did, in fact, commit misconduct during the episode which ended with her saying to Spiegel, "You're a good liar." First, the preceding question about why Spiegel's family believed P.T. was completely irrelevant. The follow-up statement, however, is more troubling, as an obvious expression of the prosecutor's opinion that Spiegel is not credible. Attorneys are simply not permitted to express "a personal opinion as to the credibility of a witness." Hobson v. State, 675 N.E.2d 1090, 1095 (Ind. 1996) (citing Ind. Professional Conduct Rule 3.4(e)). Cf. Cooper, 854 N.E.2d at 836 (not necessarily misconduct where prosecutor called defendants liars during rebuttal to closing argument). The threshold question of whether

8

the prosecutor committed misconduct during his cross-examination of Spiegel has been met.

Nevertheless, to prevail on appeal, Spiegel must also show that the prosecutor's comment subjected him to grave peril despite the admonishment given by the trial court. Here, Spiegel's extended family testified that he had confessed to the molestations, and his victim testified regarding the molestations. Still, Spiegel testified on cross-examination that he did not know why his family did not believe him. That directly contradictory evidence indicates that either Spiegel or his entire family was lying, and the prosecutor's comment merely invited the jury to determine which party was being untruthful. In light of the abundance of evidence of Spiegel's guilt, he has not shown that the prosecutor's comment subjected him to grave peril to which he otherwise would not have been subjected.

Spiegel also contends that three of the prosecutor's comments during closing argument constitute misconduct. His entire argument on that point is as follows:

> In this case, the Prosecutor made editorial comments calling the Defendant a "good liar[."] (T. 319) Later, she told the Jury if they failed to convict they "might as well tell our children to just take it and shut up." (T. 396) Then she suggested that they convict to send a message to tell the Defendant to live his life differently. (T. 299) Finally, she suggested that excusing his right to counsel under the 6th Amendment to the United States Constitution done [sic] "simply to get (him) off." (T. 407)
>
> These errors are serious. Counsel for Mr. Spiegel objected at each comment, but only asked for a mistrial on the first occasion. To the extent that the failure to do so may have waived the issues, the waiver is overcome by the fundamental nature of the error.

Appellant's Brief at 15. But Spiegel did not request an admonishment or a mistrial when objecting to any of these closing argument statements. See Castillo, 974 N.E.2d at 468.

9

Still, Spiegel states that the prosecutor's statements rise to the level of fundamental error from the cumulative effect of these statements. But he provides no cogent reasoning supporting that conclusion. Merely calling something fundamental error does not make it so. As such, Spiegel's contentions regarding the prosecutor's statements made during closing argument are waived. See Ind. Appellate Rule 46(A)(8)(a).

Although we have concluded that Spiegel has waived his appellate argument relating to several of the prosecutor's statements during final argument, we would also like to take a moment to express our belief that they also constituted misconduct. As previously mentioned, the prosecutor told the jury that, if it acquitted Spiegel, "we might as well just tell our children to just take it and shut up because that is what you'll be saying." This statement is not based on the evidence and strikes us as an attempt to play on the fears of the jurors, and it is well-settled that "[i]t is misconduct to phrase final argument in a manner calculated to inflame the passions or prejudices of the jury[.]" Johnson v. State, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983). Moreover, when the prosecutor told the jury that it should send Spiegel to prison so that he might be healed, this is an impermissible comment regarding the possible penal consequences of conviction. "[W]hen punishment is not to be imposed by the jury, it is not a matter to be placed before the jury, by the State, for its consideration." Lainhart v. State, 916 N.E.2d 924, 934 (Ind. Ct. App. 2009). Although the prosecutor made no specific statement regarding potential terms of incarceration, her statement was nonetheless too close for our comfort. Finally, we believe improper the prosecutor's statement to the jury, "You can't be set free by hiring an attorney to get you off when you know you've done wrong."

10

Although we recognize the disparate roles of the prosecutor and defense attorney in a criminal trial, it is nonetheless improper to highlight the disparate roles to the jury. Therefore, the prosecutor's statement that Spiegel's attorney was there to "get him off" amounts to misconduct; "if jurors are tainted by the viewpoint that only the prosecutor is presenting the truth and the defense counsel's role is to obstruct the search for truth, they may evaluate every bit of evidence from this perspective." Bardonner v. State, 587 N.E.2d 1353, 1360 (Ind. Ct. App. 1992), trans. denied.

## Issue Two:  Jury Questions

Spiegel also contends that the trial court erred in the manner in which it issued an additional instruction to the jury after deliberations had begun.  He does not contend that the trial court erred when it gave the jury an additional instruction.  Rather, he argues that the trial court was required to have re-read all of the jury instructions in order to avoid overemphasizing the newly added instruction.  We conclude that Spiegel has not preserved this issue for review.

> In Graves v. State, 714 N.E.2d 724 (Ind. Ct. App. 1999), we observed:

> [O]ur supreme court has long recognized that once jury deliberations commence, the trial court should not give any additional instructions.  Only one limited and narrow exception has been recognized to this strict rule.  When the jury's question coincides with an error or "legal lacuna" in the final instructions, the trial court may respond in a manner other than simply re-reading the entire set of final instructions.  However, the court must not undertake this endeavor lightly for "the path is extremely hazardous for the court that would depart from the body of final instructions and do other than reread the final instructions in responding to jury questions."

Id. at 726.  In Graves, the defendant had "strenuously objected . . . to providing an additional instruction without re-reading the entire set of final instructions." Id.

11

Here, although Spiegel initially objected to the giving of any supplemental instruction on the ground that there was no difference between the evidence at trial and the charging information, on appeal he does not argue that the court erred based on a variance between the evidence and the charging information. Instead, he argues only that the procedure employed by the trial court in supplementing the jury instructions was erroneous. A party may not object on one ground at trial and rely on a different ground on appeal. Small v. State, 736 N.E.2d 742, 747 (Ind. 2000). Spiegel has not preserved his claim for appellate review.

Additionally, Spiegel invited the error. Spiegel did not ask that the trial court re-read all of the final instructions, nor did he object to the trial court's decision to insert the additional instruction in the instruction packets given to the jurors and then return the packets to the jurors. In fact, he specifically agreed to the method employed in responding to the jury question. Spiegel expressed concern that handing the additional instruction by itself to the jurors could draw attention to that instruction, but he approved the method of inserting the instruction and then returning the entire instruction packet to the jurors.[2] A party may not take advantage of an error that he commits, invites, or is the natural consequence of his own neglect or misconduct. Baugh v. State, 933 N.E.2d 1277, 1280 (Ind. 2010). Spiegel may not now appeal the error he invited by approving the procedure for giving the additional instruction to the jury.

---

[2] Spiegel contends that he had asserted a general objection regarding the additional instruction to the jury. As explained above, our review of the transcript shows that his objection was to the necessity for such an instruction. Once the trial court had determined to give an additional instruction, Spiegel specifically approved of the method proposed by the trial court for accomplishing that task.

Finally, failure to object at trial constitutes waiver of review unless an error is fundamental. Absher v. State, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). A party cannot sit idly by, permit the trial court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time. Robles v. State, 705 N.E.2d 183, 187 (Ind. Ct. App. 1998). Spiegel has waived his claim of error and he makes no argument that the trial court's action constituted fundamental error. Thus, his claim on this issue is without merit.

Affirmed.

BRADFORD, J., concurs.

FRIEDLANDER, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

MAXIMILIAN SPIEGEL,     )
             )
  Appellant - Defendant,   )
             )
     vs.       )   No. 49A02-1208-CR-687
             )
STATE OF INDIANA,     )
             )
  Appellee - Plaintiff.    )
             )

**FRIEDLANDER, Judge, concurring**

I fully concur in the panel's opinion, but write separately to express a few thoughts on the issue of prosecutorial misconduct in the present case. We correctly conclude that the prosecuting attorney in this case crossed the line of acceptable advocacy not once, but four times. She called Spiegel a liar on the witness stand, commented upon possible penal consequences of a verdict of "guilty", highlighted the disparate roles of prosecuting and defense attorneys, and intimated to the jury that a vote of "not guilty" was tantamount to societal condemnation of unspecified other children to suffer similar abuse at the hands of other perpetrators, without recourse. We also conclude that these transgressions do not merit reversal because they were waived and because of the strength of the evidence of guilt.

14

In reaching these conclusions, we do not go so far as to explicitly "condemn" the prosecuting attorney's actions, although we could, and perhaps should. Be that as it may, there is cause to doubt the efficacy of even an official condemnation of such behavior. Our appellate courts have on occasion issued condemnations of prosecutorial misconduct. *See*, *e.g.*, *Splunge v. State*, 641 N.E.2d 628 (Ind. 1994) (the Supreme Court condemned the prosecutor's attempt to remind the jury that the defendant did not testify, but nevertheless affirmed because of the overwhelming evidence of guilt) ; *see also Bernard v. State* , 540 N.E.2d 23, 25 (Ind. 1989) (prosecutor's comments on the defendant's failure to testify were described as "condemnable"). Yet, instances of condemnable prosecutorial behavior continue to come before us on appeal. It would seem that our admonishments are falling on deaf ears on an all-too-regular basis. At some point, I will be forced to conclude that our condemnations lack sufficient deterrent effect, and that only reversal will provide sufficient impetus for adhering to the well-settled boundaries of propriety in these matters.